MARY F. ANTES, Appellee, v. CONSUMERS CONSOLIDATED COAL COMPANY, Appellant.

TROVER AND CONVERSION: Identification of Goods—Evidence. In 1 an action against an execution plaintiff for conversion of goods stored in certain "boxes, barrels, and trunks," and sold in bulk, without inventory of the contents, plaintiff may introduce duly identified and detailed inventories of the contents, on a showing that such inventories represent the contents of said "boxes, barrels, and trunks."

WITNESSES: Examination—Memory-refreshing Memoranda. An in- 2 ventory of goods which a witness shows was correct when made, may be used by the witness to refresh his memory, and is admissible for that purpose.

TROVER AND CONVERSION: Title—Evidence. On the issue of own- 3 ership of personal property, plaintiff may introduce (for what it is worth) a policy of insurance carried by him on the property, especially when defendant is insisting that plaintiff's claim of ownership is a belated afterthought.

**APPEAL AND ERROR:** Harmless Error—Exclusion of Non-explanatory
4  **Question.** The exclusion of questions as to the value of an article,
put to a witness who has already stated that he does not know such
value, cannot be made the basis of error when the complainant fails
to enlighten the court as to what the witness would testify to. (See
Book of Anno., Vol. 1, Sec. 11548, Anno. 19 *et seq.*)

Headnote 1: 38 Cyc. pp. 2080, 2081. Headnote 2: 40 Cyc. pp. 2451,
2452, 2454. Headnote 3: 38 Cyc. p. 2081. Headnote 4: 3 C. J. p. 825;
4 C. J. p. 1004.

*Appeal from Polk District Court.*—W. G. BONNER, Judge.

NOVEMBER 16, 1926.

REHEARING DENIED MARCH 22, 1927.

Action for damages for conversion of certain household
goods. The answer was a general denial, subject to certain ad-
missions. There was a verdict for the plaintiff, and judgment
rendered thereon. The defendant has appealed.—*Affirmed.*

*Walter L. Stewart, George F. Malcolm, N. L. Friedman,* and
*Guy S. Calkins,* for appellant.

*Miller, Kelly, Shuttleworth & McManus* and *John Mc-
Lennan,* for appellee.

EVANS, J.—The plaintiff set forth a copy of an inventory of
the goods alleged to have been wrongfully converted by the de-
fendant. This inventory contains hundreds of items. The an-
swer of the defendant admitted sale under execution in favor
of the defendant of certain "barrels, boxes, trunks, etc., con-
taining dishes, linens, and other household furniture and mer-
chandise, same being in storage in the warehouse of the White
Line Transfer & Storage Company, in the city of Des Moines,
Iowa, in the name of said W. H. Antes." It appears from the
record that the defendant levied an attachment upon certain
household goods, such as are described in its answer, and later
caused the same to be sold under special execution, to satisfy
its judgment against one W. H. Antes, the then husband of the
plaintiff. Such property was sold as the property of the judg-

ment-defendant. The plaintiff claims to have been the owner of all this property. That she was such, her evidence tends strongly to establish. Further material facts will be stated in connection with our consideration of the several assignments of error.

I. The defendant pleaded in its answer that, at or about the time of the attachment of the goods, W. H. Antes was the agent of the plaintiff, and that he was notified of the attachment of the goods, and that such notice was binding upon the plaintiff, and that she took no steps to assert her claim; that the said W. H. Antes advised the defendant that the goods in question were stored with the White Line Transfer & Storage Company, in the name of their owner; that they were in fact stored in the name of W. H. Antes; that the defendant relied upon this representation; and that the plaintiff is now estopped from denying the statements of Antes and from asserting her present claim to the goods. Error is assigned because the trial court withdrew such tendered issue from the consideration of the jury and struck the allegations from the answer. It appears without dispute that the plaintiff knew nothing of the attachment suit or of the proposed sale of the property in advance of the sale. Her first knowledge of the seizure of the property came after the sale had been made. There was no evidence of agency, unless the relationship of husband and wife should be deemed sufficient for that purpose. W. H. Antes at that time was residing in the state of Wisconsin. The plaintiff was absent in the state of Illinois. W. H. Antes did not assume to speak as agent for his wife. He wrote a letter to the defendant, Exhibit C, protesting against its attachment of the goods, and asserting that they belonged to his son and his wife, and that he owned none of them, and warning the defendant against the seizure of the property of other people for the payment of his own debts. He did say in such letter that the goods were stored in the name of the son and wife, and this was a mistaken assertion. It is upon this assertion that the defendant predicates its allegation that W. H. Antes, as the agent of his wife, asserted his ownership of the goods by saying that such goods were stored in the name of their owners. The letter plainly asserted that the property did not belong to W. H. Antes, or any part of it. The defendant was in no manner misled, and could not have been misled by the mistaken assertion. Such allegations thus withdrawn, therefore, had

no substance as an affirmative defense, and were properly ignored by the court.

II. The plaintiff produced in evidence certain Exhibits A and B, which were the inventories of which she had attached copies to her petition. These inventories contained an itemized statement of all the household goods stored with the White Line Transfer & Storage Company, together with the purported value of each item. She testified that these inventories were made by her and under her supervision, at and immediately before the time of storage. She testified also that she knew the values of these articles at the time, and that such values were those which were placed upon the inventories opposite to its items. These inventories were received in evidence over the objection of the defendant. It is argued first that they failed to identify the goods sold by the defendant under execution, and that there is no evidence that the goods sold under execution and the goods described in the plaintiff's inventories were identical. It appears from the evidence that the goods were stored with the Storage Company in containers such as barrels and boxes and trunks and cedar chests. The return on the execution shows that the barrels and trunks and boxes, with their contents, were sold for the sum of $356. No enumeration of the contents of the containers appears in such return. For this reason it would be impossible for plaintiff to connect the items in her inventories with any items appearing upon the return of the execution. It was made to appear by the evidence that all the property stored in the name of W. H. Antes with this storage company was sold under this execution. It was also made to appear that the property covered by the plaintiff's inventories was the property that was thus stored in the name of W. H. Antes. We think that the evidence in this form was sufficient to go to the jury.

It is urged that the inventories were not written in the handwriting of the plaintiff. Some portions of them were. Other portions were not, but were made under her supervision. She did testify that they were so made when the facts were fresh in her mind, and that at that time she knew them to be correct, and that she knew the values appended to be correct. This rendered them sufficient as memoranda proper to be used by the witness in aid

1. TROVER AND CONVERSION: identification of goods: evidence.

2. WITNESSES: examination: memory-refreshing memoranda.

of her memory, and proper to be admitted in evidence as such only. They were so restricted by the court in the admission thereof. *State v. Brady,* 100 Iowa 191; Bradner on Evidence (2d Ed.) 468-470. The defendant produced no schedule of the goods sold under execution. There was, therefore, no conflict in the evidence on the question of identity. The evidence disclosed, however, that all household goods in storage in the name of W. H. Antes with the White Line Transfer & Storage Company were sold under execution. It also disclosed that all the property thus stored belonged to the plaintiff. If the defendant had produced a schedule of what it sold, it would have been in a better position to insist before the court that the schedule offered by the plaintiff should conform in its items to that exhibited by the return on the execution. The fact that no such schedule appears to have been made at the execution sale should not be permitted to close the door of evidence against the plaintiff.

III. Error is assigned by appellant upon the admission in evidence of a certain policy of insurance purporting to cover the property in controversy. The plaintiff was the insured therein.

3. TROVER AND CONVERSION: title: evidence.

The policy was issued in November, 1918, and described the property as being in storage with the White Line Transfer & Storage Company. This evidence was received by the court on redirect examination of the plaintiff as a witness. The good faith of plaintiff's claim of ownership was challenged throughout the trial by the defendant. She testified concerning her inventory that it was made at the time the goods were packed for the purpose of storage. She testified on cross-examination that she usually kept an inventory of her goods for the purpose of insurance. She was asked also whether she carried insurance. This was answered by her in the affirmative. On redirect examination, the policy in question was offered and received in evidence. The taking out of this policy by her in November, 1918, tended undoubtedly to corroborate the plaintiff's claim of ownership, and tended to negative the constant challenge that her claim of ownership was a late afterthought. Its issuance was a circumstance tending to support her claim of ownership at that time. It constituted one of those signs or indicia of ownership which usually attend the ownership of personal property and arise spontaneously out of

the conduct of the owner. The evidentiary value of such indicia is set forth in Bowers on the Law of Conversion 439, Section 603, as follows:

"When the question of title and right of possession of personal property is involved in an action of trover, it is to be determined by the same rules of evidence as apply in other cases where such fact must be established. Thus, circumstances which are the ordinary indicia of ownership, or that tend to indicate ownership, are admissible as evidence thereof. So, the paying of taxes, procuring a policy of insurance describing the property and naming the person to be insured, the giving of a note to secure against losses, and the payment of assessments to meet losses, are all proper tests of ownership,—not conclusive, but competent to be submitted to and weighed by the jury. Positive testimony will not be required if the circumstances shown will support an inference of the truth of the matters alleged."

. We think the policy was admissible in evidence for this purpose. The principal complaint directed against it is that it was a policy for $4,000, and that it tended, therefore, to fix a valuation upon the property and to mislead the jury in that regard. But the objection of the defendant to the evidence went to its admissibility for any purpose. It did not seek to restrict or confine the consideration of the policy. While the court might well have done so on its own motion, yet the defendant is in no position to complain of its failure in that respect, in the absence of any request or suggestion on its part that the jury should be restricted in the consideration of this item of evidence.

IV. The defendant called the witness Holmberg. He was the bailiff or deputy sheriff who conducted the execution sale. The defendant interrogated him as to the value of various items thus sold. He failed to qualify as to his knowledge of such values, and the court sustained objections to the interrogatories propounded on the question of value. Error is assigned at this point. It is sufficient to say that this witness frankly disqualified himself. In answer to the interrogatories of the court, he stated that he knew nothing personally as to the values of such articles. The defendant laid no foundation for this assignment of error. It did not disclose to the trial court what it claimed the testimony of the witness would be. If there is any inference to be

4. APPEAL AND
ERROR: harmless
error: exclusion
of non-explana-
tory question.

drawn from the record as made, it was only that the witness would testify to his opinion that such articles were worth just what they would bring at execution sale. There was no error at this point. Defendant also offered the witness Mrs. Lloyd, and complains of the refusal of the court to permit her to express an opinion. This ruling by the court was predicated on want of qualification shown by the witness. It is enough to say here that, later in the course of the trial, the witness was again produced, and permitted to testify to her opinion. What was true of this witness was also true of the witness Barnes, whose testimony was first rejected, and later was received in evidence.

The foregoing comprise the assignments of error upon which the stress of argument is laid. Other minor errors are complained of. We have examined all the assignments and the record pertaining thereto. We find no reversible error. The verdict rendered impresses us as somewhat large. The trial court reduced it in the amount of $500, and allowed it to stand at approximately $2,600. The verdict in such amount had the support of the plaintiff's evidence. The defendant offered no contradictory evidence, other than to justify the valuation determined by the execution sale. Such execution sale was not without its oppressive features. The defendant had little reason to believe that a jury would accept the amount realized thereon as a fair value of the goods. The record as it is will not justify interference on our part with the verdict as finally approved by the district court.

The judgment is, accordingly, affirmed.—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.

On petition for rehearing, the judgment was conditionally reduced to $2,000. Plaintiff filing a remittitur to that extent, rehearing was denied, March 22, 1927.